RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 12-18-07

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| ARCTIC SLOPE REGIONAL CORP.<br>ASRC ENERGY SERVICES, INC.<br>OMEGA NATCHIQ, INC. | CIVIL ACTION NO. 07-0476 |
| VS. | JUDGE MELANÇON |
| AFFILIATED FM INS. CO. | MAGISTRATE JUDGE METHVIN |

### MEMORANDUM RULING

Before the Court are defendant's Motion for Summary Judgment [Rec. Doc. 65], plaintiffs' Memorandum in Opposition thereto [Rec. Doc. 69], and defendant's Response to plaintiffs' Opposition [Rec. Doc. 72]. For the reasons that follow, the defendant's Motion [Rec. Doc. 65] will be **GRANTED**.

### I. BACKGROUND

This case involves a claim for insurance coverage for damages to facilities owned by Omega Natchiq, Inc., a wholly owned subsidiary of ASRC Energy Services, Inc. and Arctic Slope Regional Corporation (collectively "plaintiffs"), resulting from Hurricane Rita. A detailed recitation of the applicable facts is contained in the Court's August 30, 2007 Memorandum Ruling [Rec. Doc. 60] and will not be regurgitated here. In its August 30, 2007 Judgment [Rec. Doc. 61], this Court ruled that plaintiffs' claims were not covered under the "**Wind and/or hail**" provision of the insurance contract existing between the parties (the "policy"). Following the Court's ruling, defendant, Affiliated FM Insurance Company ("Affiliated" or "defendant"), filed this Motion for Summary Judgment [Rec. Doc. 65] seeking a

judicial determination that plaintiffs' damages are also not covered by the "**Flood**" provision of the policy.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (*en banc*). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[1] *Id.* at 322-23. Once the burden shifts to the respondent, he must direct the attention of the court to

---

[1] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III.  LAW AND ANALYSIS

**A.  Applicable law**

As this motion involves the interpretation of the same "all-risk" insurance

3

policy, the applicable law described in the Court's first Memorandum Ruling [Rec. Doc. 60] applies in this case. The Court summarized the applicable law as follows:

> Because the Court's jurisdiction in this case is based on diversity, state substantive law will govern the outcome. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Ashland Chem. Inc. v. Barco Inc.*, 123 F.3d 261, 265 (5th Cir. 1997). In determining which state's law should apply, the Court looks to the conflicts of law principles of the forum state - i.e. Louisiana. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Here, because the policy covered real property situated in Louisiana and the loss occurred in Louisiana, it is undisputed that Louisiana law applies.
>
> Louisiana law defines an insurance policy as a contract between the parties. *Cadwaller v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003). Accordingly, the general rules for interpreting contracts must be applied in construing the terms of a policy. *Id.* Under the Civil Code, the interpretation of a contract "... is the determination of the common intent of the parties." La. Civ. Code Art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties intent." La. Civ. Code Art. 2046. "The words of a contract must be given their generally prevailing meaning," and "[w]ords susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. Civ. Code Arts. 2047, 2048.
>
> If an entire provision of a contract is susceptible of different meanings, the provision "... must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. Civ. Code Art. 2049. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code Art. 2050. This is especially true in interpreting insurance policies. The Louisiana Insurance Code, La. Rev. Stat. § 22:1, *et seq*, provides that an insurance policy must be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." La. Rev. Stat. § 22:654.
>
> When an ambiguity exists, it "... must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions." *La. Ins. Guar. Assoc. v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763

(La. 1994), *citing* La. Civ. Code Art. 2050. Ambiguity may also be resolved "... by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Id* at 764, *citing Breland v. Schilling*, 550 So2d 609, 610-11 (La. 1989). "The court should construe the policy 'to fulfill the reasonable expectations of the parties in light of the customs and usages of the industry." *Id., quoting Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 269 (5th Cir. 1990). "If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured." *Id.* at 764.

"Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer." *Cadwaller*, 848 So. 2d at 580. However, "[t]hat strict construction principal **applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations**; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable." *Id.* (emphasis added). Courts should not interpret insurance policies "... in an unreasonable and strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by the parties." *Id.* In fact, "[c]ourts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms." *Id.*

"All-risk" policies, like the policy at issue in this case, "create[] a special type of coverage that extends to risks not usually covered under other insurance; recovery under an all-risk policy will be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." *Alton Ochsner Med. Found. v. Allendale Mut. Ins. Co.*, 219 F.3d 501, 504 (5th Cir. 2001), *citing U.S. Indus., Inc. v. Aetna Cas. & Sur. Co.*, 690 F.2d 459, 461 (5th Cir. 1982). Even "all-risk" insurers, however, may limit coverage. "[A]bsent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume." *Carbon v. Allstate Ins. Co.*, 719 So. 2d 437, 440 (La. 1998). As previously noted, "exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured." *Ledbetter v. Concord Gen. Corp.*, 665 So. 2d 1166, 1169 (La.

2006).

## B.   The General "Flood" Provision

It is undisputed that Section C., Item 2 specifically extends the policy "[. . . ] to cover direct physical loss or damage to insured property caused by or resulting from **flood**." The policy defines the term "**flood**" as

> . . . any surface water; tidal or seismic sea wave; rising (including overflowing or breaking of boundaries) of any body of water; including but not limited to reservoirs, lakes, streams, rivers, ponds and harbors all whether driven by wind or not, and including spray from any of the foregoing that results from, contributes to, or is aggravated by any of the above. **Flood** also includes physical loss or damage from water which backs up through sewers or drains that are below ground level as a result of **flood**.

The damages to plaintiffs' facility were caused by Hurricane Rita's storm surge. As defined by the National Oceanic & Atmospheric Administration, the parent agency of the National Weather Service and the National Hurricane Center, "storm surge" is ". . . [a] rise above the normal water level along a shore caused by strong onshore winds and/or reduced atmospheric pressure."[2] This Court previously held that the policy's definition of "**flood**" encompasses storm surge. In accordance with that prior holding, the Court finds that the policy's general "**flood**" provision covers damages resulting from storm surge.

## C.   The Exclusion and the Exception to the Exclusion

While the "**flood**" provision provides coverage for storm surge related losses,

---

[2]  National Oceanic & Atmospheric Administration. *JetStream - An Online School for Weather*, http://www.srh.weather.gov/srh/jetstream/append/glossary_s.htm.

it is limited in important respects by Section H of the "Declarations" section of the policy. Item 1 of Section H, entitled "Flood Exclusion," provides:

> Coverage as provided by Section C., Additional Coverage, Item 2. Flood; is excluded at any location situated in:
>
> 1. Any flood zone or area designated by the Federal Emergency Management Agency (FEMA) as subject to a flood frequency up to and including the 100 year frequency, or
>
> 2. Any flood zone or area for which FEMA has not yet determined the flood hazard frequency or has not yet classified or designated as being in or out of a flood zone, or any area outside the United States.

It is undisputed that the damaged property was located in a " . . . flood zone or area designated by the Federal Emergency Management Agency (FEMA) as subject to a flood frequency up to and including the 100 year frequency."[3] Plaintiff's loss, then, is unequivocally removed from the policy's general "**flood**" coverage. However, the policy provides a very narrow exception to this exclusion. That exception provides:

> The peril of flood is covered in an area protected by dams, levees, dikes, or walls which:
>
> a. Protect such areas from at least the level of the 100 year flood, and have no such openings or flood gates, and
>
> b. Were built by and are either maintained or inspected by the United States (U.S.) Army Corps of Engineers.
>
> Affiliated FM will not undertake any duty to advise the insured on whether any locations are in an area excluded from coverage under the Flood Endorsement. The Insured has the responsibility to determine

---

[3] *Plaintiff's Responses to Defendant's Statement of Uncontested Material Facts* [Rec. Doc. 69-1], ¶3.

whether its locations are in an excluded area.

The interpretation of this exception is the crux of the instant Motion for Summary Judgment.

Affiliated admits that the damaged property was protected by levees maintained by the U.S. Army Corps of Engineers. However, based on a report issued by Dodson & Associates, Inc., a hydrology consulting firm, defendant argues that: (1) the levees protecting the site have openings and floodgates, and (2) even absent the openings and floodgates, the levees do not protect against the 100 year flood as required by the clear language of the policy. In response, plaintiffs argue that the exception to the exclusion is fraught with ambiguity and must be strictly construed against the insurer.

Plaintiffs first allege that the exception is ambiguous in its use of the term "protected." The policy requires that the levees or dams must protect against the "100 year flood." The "generally prevailing meaning" of the term "100 year flood" is ". . . a flood that has a 1-percent chance of being equaled or exceeded in any given year."[4] This concept is the standard used by most Federal and state agencies, including the National Flood Insurance Program, as the standard for flood plain management and to determine the need for flood insurance.[5] Plaintiffs argue, however, that because the policy does not specifically require protection from the

---

[4] Federal Emergency Management Agency. *Frequently Asked Questions.* http://www.fema.gov/plan/prevent/fhm/fq_term.shtm

[5] *Id.*

8

100 year *coastal* flood, the exception should apply as the property is protected from the 100 year *riverine* flood. It is notable that the definition of a "100 year flood" makes no distinction based on the source of the flood. Considering the lack of distinction in the general definition and policy language, the Court finds that neither party could have reasonably expected the policy to only apply to a 100 year riverian flood. This is supported by the definition of the term "**flood**" contained in the policy itself. In the policy, a "**flood**" includes the "rising (including overflowing or breaking of boundaries) of *any* body of water." (emphasis added). Viewing the policy as a whole, giving the words used in the contract their ordinary meaning, and considering the reasonable expectations of the parties at the time the contract was entered into, it is clear that the parties intended to exclude areas not protected from any 100 year flood - whether riverine or coastal in nature. Thus, plaintiffs' argument fails.

Second, plaintiff argues that the use of the word "such" before the phrase "openings or flood gates" renders that phrase meaningless and ambiguous as the term has no antecedent meaning. When interpreting a contract under Louisiana law, any provision which may be susceptible to different meanings "... must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. Civ. Code Art. 2049. Use of the word "such" in this instance may be awkward or simple surplusage, but plaintiffs suggest no interpretation, much less a reasonable interpretation, other than requiring that there be no openings or floodgates in the levees or dams protecting the property. Applying the precepts of contractual

interpretation, then, it is clear that, contrary to plaintiffs' assertion, the language of the policy requires that the levees or dams have no openings or floodgates.

Plaintiffs admit that the levees protecting the damaged property did, in fact, have openings and floodgates. They further admit that the levees that protect the property only protect against riverine flood - not coastal flood. Having found no ambiguity in the language of the exception, the Court finds that the exception to the exclusion does not apply.

In arguing their interpretation of the policy, plaintiffs cite to the rule of strict construction of policies in favor of the insured. Plaintiffs are correct to note that "[. . .]equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer." *Cadwaller*, 848 So. 2d at 580. However, "[t]hat strict construction principal **applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations**." *Id.* (emphasis added). As discussed, the Court finds no ambiguity in the exclusion or exception sufficient to necessitate the use of the rule of strict construction because the terms are not subject to two or more reasonable interpretations. Plaintiffs' reliance on this rule, then, is misplaced.

Finally, plaintiff argues that the requirement of no openings or floodgates is an impossibility and cannot be enforced. In support, plaintiff cites the deposition of John Tatarsky, Affiliated's Protection Underwriter. In his deposition, Mr. Tatarsky admitted that he had no personal knowledge of any levee system that would fulfill

the policy's requirement. It is important to note, however, that Mr. Tatarsky is not before the Court as an expert witness or engineer. The mere lack of knowledge of such a system does not prove that it does not exist. Plaintiffs maintain, though offer no expert or other testimony in support, that openings or floodgates are necessary to any levee or dam system and that it would be an impossibility to build an effective system without them. The Court does not pretend to have independent engineering expertise and plaintiffs have provided no reliable evidence to support its assertion. Thus, there is no evidence to support the proposition that the exception to the exclusion contemplates an impossibility.

Assuming, *arguendo*, however, that plaintiffs were correct in their assertion that the language pertaining to the openings or floodgates was either ambiguous or an impossibility, the exception would still not apply. The requirement that there be no floodgates or openings is severable from the remainder of the exception, or, alternatively, the entire exception is severable from the exclusion.[6] Thus, if the Court were to accept plaintiffs' argument and strike the whole exception, plaintiffs' losses would still be excluded because the damaged property is in a FEMA designated flood zone. Further, if the Court were to merely strike the requirement that there be

---

[6] *See Starke Taylor & Sons, Inc. v. Riverside Plantation*, 301 So. 2d 676, 680 (La. App. 3 Cir. 1974) ("Where the enforceable provisions of a contract can be severed from the unenforceable provisions, the courts should, in order to avoid inequities, sever the enforceable from the unenforceable portions, rather than declare the entire contract void.") (citing *Wilson Warehouse Company of Tex., Inc. v. Maryland Cas. Co.*, 269 So. 2d 562 (La.App.1st Cir. 1972); *Glaze v. Duson*, 4 So. 861 (La. 1888); *and Labatt v. La. Adjustment Bureau, Inc.*, 185 So. 702 (Orl.La.App. 1939)).

no openings or floodgates, plaintiffs' claims were still properly denied because the levees or dams do not provide protection from the 100 year flood. As such, the Court finds that plaintiff's claims must be dismissed.

## D. Bad Faith Claims

Plaintiff implicitly maintains that the issue of bad faith under the Louisiana Insurance Code is still viable in the face of a judicial determination that the underlying claim is not covered. Louisiana jurisprudence contradicts this assertion.[7] Accordingly, plaintiffs' claims for Title 22 damages will also be dismissed.

## IV. CONCLUSION

The damage to plaintiffs' facilities are clearly flood related losses as defined and covered by the policy. However, because the damaged property lies within a FEMA designated flood zone, the exclusion to the general coverage applies. The Court does not find that the exception to the exclusion is ambiguous or contemplates an impossibility. Applying, then, the plain language of the exception, the damaged property does not qualify and plaintiffs' losses are excluded from coverage. As there is no valid, underlying claim, plaintiffs' bad faith claims also fail. While sympathetic to the plaintiffs' plight, under the applicable law and the language of the policy, plaintiffs' claims against Affiliated must be **DISMISSED WITH PREJUDICE**.

---

[7] "Penalties authorized by statutes concerning insurers' unfair or deceptive practices and lack of good faith to fairly and promptly act upon claimant's loss of property do not provide cause of action against insurer absent valid, underlying insurance claim." *Clausen v. Fidelity and Deposit Co. of Md.*, 1995-0504 (La. App. 1 Cir. 8/4/95), 660 So.2d 83, 85, *rehearing denied, writ denied* 1995-2489 (La. 1/12/96), 666 So.2d 320.